UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD BISHOP,<br><br>    Plaintiff,<br><br>        v.<br><br>INDIANA DEP'T OF CORRECTION, et al.,<br><br>    Defendants. | CAUSE NO. 3:20-CV-1064-JD-MGG |

OPINION AND ORDER

Richard Bishop, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983 and state law. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Bishop alleges that on February 22, 2020, he and another prisoner, Woods, were fighting on the top tier of C Block of the Protective Custody Unit in the Indiana State Prison. ECF 2 at ¶ 7. Officer Grams and Officer Colvill saw the two of them fighting and yelled for them to stop. *Id.* at ¶ 8. Bishop requested that they let him out of his block so

that he could report his fear of Woods. *Id.* They allowed Bishop out of the block to the officer's cage, but they also allowed Woods to follow. *Id.*

Bishop was talking to the officers in the officer's cage when Woods came up to him and punched him in the head. ECF 2 at ¶ 10. Bishop fell and lost consciousness. *Id.* Woods continued punching him in the face, causing him to have a seizure and other facial injuries. *Id.* Grams and Colvill watched this happen and did not call for backup or otherwise try to stop the assault. *Id.* at ¶ 11.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). But, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id.* Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010), *see also Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). Bishop asked the court to consider two particular cases, *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002), and *Jones v. Vululleh*, No. 1:16-cv-1272, 2018 WL 1256796 (S.D. Ind. 2018), when screening the complaint. ECF 4. Both cases contain specific factual scenarios about when a prison guard's response to a fight was deemed unreasonable and therefore deliberately indifferent. Further factual development may establish that Grams and

Colvill's actions fit into those scenarios. But at the pleading stage, it is enough to conclude that the facts alleged in the complaint state a plausible Eighth Amendment claim that Grams and Colvill had actual knowledge of the impending harm and could have easily prevented Bishop from being attacked by keeping him separate from Woods.

In addition to the Eighth Amendment claim, Bishop also seeks to sue Grams and Colvill for the state law tort of battery, arguing that they aided or induced the battery. He contends they are responsible because they did not separate the two offenders during the first fight, they allowed Woods to follow him out of C Block, and they did not promptly call for backup or otherwise interfere during the second fight. ECF 2 at ¶ 13. However, because Grams and Colvill are government employees, Indiana law strictly limits the circumstances in which they may be sued for state law claims. Even though Bishop alleges he complied with the notice requirements of the Indiana Tort Claims Act, Indiana law grants Grams and Colvill immunity from this state law claim.

The Indiana Tort Claims Act prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). A plaintiff may sue a government employee personally only if the government employee was acting outside the scope of employment. To that end, the statute requires that a lawsuit against a government employee allege one of the enumerated circumstances that takes an act outside the

3

scope of employment: that the act or omission was criminal, clearly outside the scope of employment, malicious, willful and wanton, or calculated to benefit the employee personally. Ind. Code § 34-13-3-5(c). But Indiana defines the scope of employment broadly. Under Indiana law, an individual is acting within the scope of his or her employment if the conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency § 229 (1958)). "Even criminal acts may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (quotation marks omitted). There might be an exception for conduct "so outrageous as to be incompatible with the performance of the duty taken." *Celebration Fireworks*, 727 N.E.2d at 452-53 (quotation marks omitted). But here, the acts Bishop identifies are closely related to Grams and Colvill's duties as a correctional officer; outside of the prison context they would have no responsibility to intervene in a fight. *See Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) (affirming judgment on the pleadings dismissing prisoner's negligence claims against prison officers for injuries incurred during a cell extraction because "[e]nforcing discipline and maintaining prison security is clearly within the prison officers' scope of employment"). Therefore, the state law claims against Grams and Colvill must be dismissed.

4

Bishop also names the Indiana Department of Correction (IDOC) as a defendant, alleging both respondeat superior liability based on the actions of their employees and a state law negligence claim. But IDOC is a department in the executive branch of Indiana state government. *See* Ind. Code § 11-8-2-1. It is an arm of the state and entitled to share in the state's immunity under the Eleventh Amendment. *See Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008). This means that IDOC cannot be sued in federal court for state law claims unless the state has consented. *See Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) ("The Eleventh Amendment provides states with immunity from suits in the federal courts unless the State consents to the suit or Congress has abrogated their immunity."). Indiana has consented to suit *in state court* for their torts under some circumstances. *See Lowe v. N. Ind. Commuter Transp. Dist.*, 167 N.E.3d 290, 294 (Ind. Ct. App. 2021) ("[G]overnmental entities are subject to suit *in Indiana state courts* for their torts, with certain enumerated exceptions" (emphasis added)). But that consent does not extend to consent to be sued in federal court. *See id.* at 294 n.5; Ind. Code § 34-13-3-5(f) ("This chapter shall not be construed as . . . consent by the state of Indiana or its employees to be sued in any federal court . . .."). Therefore, the Indiana Department of Correction will be dismissed because Bishop cannot sue it in federal court for a tort claim.

Bishop next alleges that he was retaliated against because of a grievance he filed against Grams and Colvill. Bishop received two conduct reports, one for the first fight and one for the second fight in front of the officer's cage. ECF 2 at ¶¶ 17-18. At a disciplinary hearing, the hearing officer consolidated the two conduct reports into one

5

because she considered them to be one incident. *Id.* at ¶ 21. Bishop agreed to plead guilty to a minor class C fighting offense for the first fight but maintained that he did nothing wrong with regards to the second fight. *Id.* He says the hearing officer tricked him into pleading guilty to a fight under the case number linked to the second fight. *Id.*

Even though both conduct reports were already addressed in one hearing, a second disciplinary hearing was conducted by a different disciplinary hearing officer a month later. ECF 2 at ¶ 24. Bishop alleges this hearing was in retaliation for a grievance he filed against Grams and Colvill. At the hearing he was found guilty of a major class B battery offense. *Id.* As part of the sanctions, Bishop's commissary, phone, and contact visitation privileges were restricted. *Id.* at ¶¶ 24, 25. The finding of guilt during the second disciplinary hearing was overturned on appeal, but the six months of no contact visits was never rescinded. *Id.* at ¶ 26.

Though Bishop alleges a First Amendment retaliation claim, the complaint does not plausibly allege such a claim. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations, and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

6

possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

 "To state a First Amendment claim for retaliation, a plaintiff must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quotation marks omitted). "A complaint states a claim for retaliation when it sets forth a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (quotation marks omitted).

Here, there is no reasonable inference to connect the second disciplinary hearing to the grievance. Bishop alleges that the grievance specialist started investigating the grievance after the first disciplinary hearing was held, and it was during this investigation that the retaliation plan was developed. ECF 2 at ¶¶ 22-26. However, there is no plausible link alleged between Grams and Colvill (who were not involved in either hearing) and the defendants Bishop alleges were involved in the plot: Wallen, the grievance specialist; Dawn Buss, an assistant warden; Nowatzke, an assistant warden; Houston, the second disciplinary hearing officer; Ron Neal, the prison warden; and

Pamela Bane, the unit manager. Bishop alleges that retaliation can be inferred based on the timing of the events—the second disciplinary hearing was held after Defendant Wallen began investigating the grievance. The allegations are too broad to reasonably infer that all of the defendants were acting in retaliation. In fact, the complaint contains no mention of further contact with Grams of Colvill after the fight. Nothing links Gram and Colvill, who would have the motivation to retaliate, to the prison officials involved in the second disciplinary hearing.

Accordingly, Bishop will be allowed to proceed on a claim of failure to protect against Grams and Colvill. However, in the relief section, Bishop asks for a permanent injunction directing defendants to remove from his prison records the finding of guilt related to the second fight and references to the six-month, no-contact visitation sanction. This requested relief is unrelated to the claim he is proceeding on and therefore does not belong in this action. *See Steel Co. v Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998) (noting that part of standing requirement is "a likelihood that the requested relief will redress the alleged injury"). Nor can the court construe the complaint to include a due process claim regarding the prison disciplinary hearing.

A prisoner has no due process rights at a prison disciplinary hearing unless the resulting sanction deprives him of life, liberty, or property. *See Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). There is no allegation that Bishop was deprived of good time credits (and if he were, he would be barred from challenging the hearing in a § 1983 action by *Edwards v. Balisok*, 520 U.S. 641 (1997)). Thus, a liberty interest is implicated here only if the sanction creates an "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Inmates have no independent constitutional right to visitation or to particular forms of visitation. *See Ky. Dept. of Corrs. v. Thompson*, 490 U.S. 454 (1989); *Smith v. Shettle*, 946 F.2d 1250 (7th Cir. 1991). The temporary loss of visitation, commissary, and phone privileges are not atypical hardships. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 743-44 (7th Cir. 2013) ("[S]ix months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." (citation omitted)). Because Bishop has not alleged a protected liberty interest, the complaint does not state a claim for a due process violation.

For these reasons, the court:

(1) GRANTS the motion (ECF 4) for courts to read and consider certain cases;

(2) GRANTS Richard Bishop leave to proceed against M. Colvill and Grams in their individual capacities for compensatory and punitive damages for failing to protect him from the second attack by Woods on February 22, 2020, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Indiana Department of Correction, Dawn Buss, J. Nowatzke, Joshua Wallen, Houston, Ron Neal, and Pamela Bane;

(5) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) M. Colvill and Grams at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), M. Colvill and Grams to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 3, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT