UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD BISHOP,<br><br>Plaintiff,<br><br>v.<br><br>M. COLVILL, et al.,<br><br>Defendants. | CAUSE NO. 3:20-CV-1064-JD-MGG |

OPINION AND ORDER

Richard Bishop, a prisoner without a lawyer, filed a motion for partial summary judgment, asking this court to grant summary judgment as to the liability of defendant Chelsea Grams. ECF 63. He is proceeding in this case "against M. Colvill and Grams in their individual capacities for compensatory and punitive damages for failing to protect him from the second attack by Woods on February 22, 2020, in violation of the Eighth Amendment[.]" ECF 8 at 9. He does not include Colvill in his motion. Defendants filed a response brief combined with a memorandum in support of a cross motion for summary judgment as to both Grams and Colvill. ECF 66. This sparked a flurry of motions: a motion to strike defendants' combined response and memorandum in support of a cross-motion for summary judgment, ECF 72, a motion to extend the time to file a reply, ECF 73, and a motion to set aside the motion to strike and to set a briefing schedule, ECF 76. These motions are all ready to be decided.

Bishop takes issue with defendants' choice to combine their memorandum in support of their own cross-motion for summary judgment with the response to his

motion. ECF 72. He expresses confusion about how to respond to defendants' combined filing, which would require both a response to defendants' opening brief and a reply to their response to his motion, each of which have different deadlines, and he asks for an extension of time to file a reply. ECF 73. Instead of filing a response to Bishop's motions, defendants filed a motion to set briefing schedule. ECF 76. They ask that the court deny Bishop's motion to strike their response/cross-motion and to set a briefing schedule for the filing of response and reply briefs.

Defendants filed their cross-motion without prior leave of court. The Advisory Committee Comments to Local Rule 56-1 addressed the possibility of cross-motions for summary judgment:

> The Committee considered whether the rule should provide for cases with cross-motions for summary judgment, but concluded they would be better addressed in individualized case-management plans.

Local Rules Advisory Committee Comments Re: 2022 Amendment, N.D. Ind. L.R. 56-1. The defendants did not seek an individualized case-management plan. Without one, they should not have filed a cross-motion integrated into their response because there is no provision in the local rules for doing so. This is especially true where the opposing party is unrepresented because doing so created confusion and delay. For these reasons, Bishop's motion to strike, ECF 72, will be granted to the extent that the court will not consider defendants' filing. Further, the cross-motion for summary judgment, ECF 66, will be denied with leave to refile as a separate motion.

It is unnecessary to allow defendants to re-submit a separate response to plaintiff's summary judgment motion, however, because plaintiff's motion can be

2

decided on the basis of his brief alone. He has not met the incredibly high burden plaintiffs must meet to prevail at summary judgment on a claim for which they bear the burden of proof at trial.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Typically, to determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, here, the court will accept all Bishop's well-supported facts as true because, even accepting his version of events, he has not met his burden at summary judgment.

"The party that bears the burden of proof for an issue at trial must cite the facts which it believes would satisfy that burden and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant." *Bunch v. United States*, 880 F.3d 938, 941 (7th Cir. 2018) (quotation marks and alterations omitted). A plaintiff's burden at summary judgment is much higher than a plaintiff's burden at trial, where the plaintiff need only convince the jury that their version of events is more likely true than not true. To win at summary judgment, however, a plaintiff "may prevail only if he has presented evidence so compelling—as to each element of his

claim—that no reasonable jury could find for the non-movant[.]" *Mitchell v. Baker*, No. 13-cv-860-MJR-SCW, 2015 WL 5076938, at * 3 (S.D. Ill. Aug. 27, 2015).

In ruling on Bishop's motion, the court will consider the two videos contained on the DVDs, ECF 31, but not the videos submitted on the flash drive, ECF 68, which will be returned, unviewed because the court does not accept exhibits on flash drives.[1] In addition, the court will consider the statements based on personal knowledge in Bishop's summary judgment brief because he signed his brief and declared the statements within to be true under penalty of perjury. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996). Finally, the court considers the attached affidavits, which were also signed under penalty of perjury. This information establishes the following facts for purposes of this motion:

Bishop is incarcerated at the Indiana State Prison and was housed in the Protective Custody Unit when he got into a fight with another offender, Woods. ECF 63-1 at 5. A video shows the two of them talking on the upper tier of C-Block until Woods pushed him in the chest, and Bishop responded by backhanding him across the face. ECF 31. The two men then continued fighting until they got entangled and Woods was punching Bishop in the head. While they were fighting, Officer Grams, who was in the officer's cage, yelled at them to stop fighting. ECF 63-1 at 7. The two men separated.

---

[1] Flash drives are disfavored by the court. For security reasons, when video or audio recordings are filed with the court or sent to a prisoner, a CD or DVD presents a lower digital security risk. *See* https://www.us-cert.gov/ncas/tips/ST08-001 (discussing digital security risks of USB drives). Therefore, the court will deny Bishop's motion for the court to view the videos contained on the flash drive, ECF 62, as unnecessary because the court accepts as true his description of the events on those videos. If evidence contained on the flash drive is needed at summary judgment, defendants must submit it on a DVD.

Woods remained on the top tier of C-Block and yelled out to Grams that he had stopped fighting, while Bishop went down the stairs to the bottom tier. *Id.* As Woods also walked down to the bottom tier, Bishop went to the front gate and asked Grams to unlock the door to the unit so that he could approach the officer's cage to talk to her about the fight. *Id.* Grams opened the gate, but when Bishop went through, Woods followed him before he could close the gate. *Id.*

Bishop approached the officer's cage and started telling Grams that he did not feel safe living around Woods after their fight and asked for protection from him. ECF 63-1 at 8. The video shows that while Bishop was talking, Woods was standing at the other end of the officer's cage, separated from Bishop by a table. ECF 31. About a minute after Bishop started talking, Woods walked around the table towards Bishop. ECF 63-1 at 8. Within ten seconds of his approach, Woods began punching Bishop in the head, knocking him unconscious, and continued to punch him while he was on the ground. *Id.* Grams immediately called a signal 10-10 on her radio for backup. *Id.*

These facts do not establish that Grams' liability for failure to protect is so one-sided that no reasonable jury could find for her. Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). However, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). "[T]he fact that an inmate sought and

5

was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

Bishop argues that Grams should have kept him separate from Woods after the first fight. He contends that Grams should be held liable because she knew (1) the two men had recently fought, (2) Bishop said he did not feel safe around Woods, and (3) Bishop asked for protection. He does not, however, point to any signs that a second attack was imminent or even likely after the brief cooling-off period following the first fight. Bishop's statement that he did not feel safe around Woods is not enough to hold Grams liable at summary judgment for the second attack. As the Seventh Circuit observed, expressions of fear and even prior attacks are insufficient to alert guards to the need for action:

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference

6

> statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id*.
>
> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

A reasonable juror could conclude on these facts that the danger to Bishop had passed after the first fight ended. To prevail at summary judgment, Bishop must prove beyond dispute that Grams was *actually aware* of a substantial risk to his safety and failed to act reasonably. A reasonable juror could conclude that Woods' demeanor after the first fight did not suggest he posed an imminent risk to Bishop, and Bishop does not identify any specific threats of future harm that he communicated to Grams. The evidence here is not so one-sided that Grams' liability would be a foregone conclusion at trial.

Bishop also moves for summary judgment as to Grams' liability on an Eighth Amendment medical claim. ECF 63-1 at 10. However, he was not granted leave to

proceed on a medical claim against her. S*ee* ECF 18 at 5-6 (denying Bishop leave to procced on a medical claim). Therefore, this will also be denied.

    For these reasons, the court:

    (1) DIRECTS the clerk to return the flash drive (ECF 70) to defendants and DENIES the motion for protective order (ECF 69) and the motion for the court to review the videos (ECF 62) as unnecessary;

    (2) GRANTS the motion to strike (ECF 72) to the extent that the court will not consider defendants' brief (ECF 66);

    (3) DENIES the motion for an extension of time (ECF 73) and motion to set a briefing schedule (ECF 76) as moot;

    (4) DENIES plaintiff's motion for partial summary judgment (ECF 63) and defendants' cross-motion for summary judgment (ECF 66); and

    (5) GRANTS defendants until **June 6, 2022**, to file a renewed motion for summary judgment.

    SO ORDERED on May 16, 2022

                                                    /s/JON E. DEGUILIO  
                                                    CHIEF JUDGE  
                                                    UNITED STATES DISTRICT COURT